IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MAUREEN CARRIGAN, individually and on behalf of all others similarly situated, | | |
| Plaintiff, | | |
| v. | | Case No. 1:18-cv-07073 |
| RECKITT BENCKISER, LLC, | | Hon. Charles R. Norgle |
| Defendant. | | |

## ORDER

Defendant's motion to exclude the opinions and expert report of Farshid Guilak, Ph.D., in support of Plaintiff's motion for class certification [40] is granted, but only on the basis that it is irrelevant to Plaintiff's motion for class certification. Plaintiff's motion for leave to file portions of Plaintiff's reply brief in support of motion for class certification provisionally under seal [44] is granted. Plaintiff's motion for class certification [31] [32] is granted.

## MEMORANDUM OPINION

Plaintiff, Maureen Carrigan, filed this putative class action against Defendant, Reckitt

Benckiser, LLC, for violation of section 2 of the Illinois Consumer Fraud and Deceptive Business

Practices Act, 815 Ill. Comp. Stat. 505/2. Dkt. 1. Plaintiff's complaint alleges that Defendant

markets, sells, and distributes a line of glucosamine and chondroitin-based dietary supplements

under the "Schiff Move Free Advanced" brand name. Dkt. 1 at ¶¶ 2, 14. Plaintiff alleges that

Defendant's advertising, marketing, packaging, and labeling of its Move Free Advanced products

represent to consumers that the products support and promote joint health, reduce joint pain, and

reduce joint stiffness. Dkt. 1 at ¶ 23. For example, the packaging of Defendant's Move Free

Advanced products prominently states, "SUPPORTS 5 SIGNS OF JOINT HEALTH" including

"Mobility," "Comfort," "Strength," "Flexibility," and "Lubrication." Dkt. 1 at ¶ 25. However,

according to Plaintiff's complaint, Defendant's Move Free Advanced products and their ingredients, both alone and in combination, provide no joint health benefits. Dkt. 1 at ¶¶ 31-88. In fact, according to Plaintiff, while the represented joint health benefits were the only purpose of Plaintiff's and the class members' purchases of Move Free Advanced products, those products were worthless for that or any other purpose. Dkt. 1 at ¶¶ 89-96. Plaintiff now moves to certify the class of Illinois consumers who purchased Move Free Advanced products between May 28, 2015 and the date the class notice is disseminated. Dkt. 31, 32.

## I. LEGAL STANDARD

Class certification is governed by Federal Rule of Civil Procedure 23. Rule 23(a) includes four prerequisites to class actions: (1) the class must be so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims of the representative parties are typical of the claims of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). As relevant to Plaintiff's framing, if those prerequisites are satisfied, a class action may be maintained under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Rule 23 requirements are more than a mere pleading standard: Plaintiff must prove them by a preponderance of the evidence. Messner v. Northshore University HealthSystem, 669 F.3d 802, 811 (7th Cir. 2012). However, in conducting the Rule 23 analysis, courts "should not turn the class certification proceedings into a dress rehearsal for the trial on the merits." Id.

## II. ANALYSIS

Before addressing the merits of Plaintiff's motion and Defendant's opposing arguments, the Court must first address Defendant's motion to exclude the opinions and expert report of Farshid Guilak, Ph.D. Dkt. 40. Plaintiff submitted Dr. Guilak's report as an exhibit in support of her motion for class certification. Dkt. 31-33. Dr. Guilak is a Professor in the Department of Orthopaedic Surgery at Washington University in St. Louis and Director of Research for the Shriners Hospitals for Children – St. Louis Shriners. Dkt. 31-33 at ¶ 1. Plaintiff retained Dr. Guilak to evaluate the efficacy of Defendant's Move Free Advanced products as to their purported joint health benefits. Dkt. 31-33 at ¶¶ 10-14. The bottom line of Dr. Guilak's opinion is that Defendant's Move Free Advanced products provide no joint health benefits, based on a series of studies on pig cartilage that Dr. Guilak supervised over a 48-hour period as well as Dr. Guilak's review of relevant scientific literature. Dkt. 31-33 at ¶¶ 15, 22, 27, 30.

Defendant moves to exclude Dr. Guilak's opinions and report as inadmissible under Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993). Dkt. 40. Defendant claims that Dr. Guilak's report is not based on sufficient facts or data, is not the product of reliable principles and methods, and is not a reliable application of the principles and methods to the facts of the case. Plaintiff, of course, disagrees. But aside from a single line in the introduction to Defendant's motion, the parties elide the most salient point about Dr. Guilak's report at this stage of the case: it is irrelevant to Plaintiff's motion for class certification.

District courts must make conclusive rulings on any challenge to an expert's qualifications or submissions before it may rule on a motion for class certification when the expert's report or testimony is "critical to class certification." Messner, 669 F.3d at 812. "Critical" in this setting means "important to an issue decisive for the motion for class certification." Id. Further, if there is

3

room for doubt about whether an expert's opinions are critical for a class certification decision, the court "should make an explicit *Daubert* ruling" because "[a]n erroneous *Daubert* ruling excluding non-critical expert testimony would result, at worst, in the exclusion of expert testimony that did not matter." Id.

Dr. Guilak's report is not remotely important to Plaintiff's class certification motion. It does not relate to the numerosity, commonality, typicality, or adequacy prerequisites under Rule 23(a). Nor does it relate to whether any common questions predominate over individual questions under Rule 23(b)(3). In fact, Plaintiff does not cite to Dr. Guilak's report anywhere in her substantive argument as to why class certification is appropriate in her motion or at all in her reply and sur-reply. Rather, Dr. Guilak's report relates only to the merits of Plaintiff's Consumer Fraud Act claim, particularly whether Defendant's representations about the joint health benefits of their Move Free Advanced products are in fact false or misleading. But the Court need not and should not involve itself in the merits of Plaintiff's claims at the class certification stage. Messner, 669 F.3d at 811. For that reason, the Court grants Defendant's motion to exclude Dr. Guilak's report, but only as to Plaintiff's motion for class certification and only because it is irrelevant.

Turning to the merits of Plaintiff's motion for class certification, Defendant raises three overarching reasons why a class action is not a superior method for adjudicating Plaintiff's claims: (1) Plaintiff has not established all of the Rule 23(a) prerequisites because her claims are not typical of the claims of the proposed class and neither she nor her counsel will adequately protect the interests of the proposed class; (2) Plaintiff has not satisfied the requirements of Rule 23(b)(3) because individual issues of proximate cause and class overbreadth predominate; and (3) Plaintiff has not satisfied the requirements of Rule 23(b)(3) because Plaintiff has failed to establish that damages can be measured on a class-wide basis. For the following reasons, the Court finds that

4

Defendant's objections are not well founded and, instead, that Plaintiff has established the Rule 23(a) prerequisites and the Rule 23(b)(3) requirements so the Court grants Plaintiff's motion for class certification.

**A. Plaintiff has established that the class of Illinois consumers who purchased Move Free Advanced products between May 28, 2015 and the date the notice is disseminated is sufficiently definite and ascertainable.**

Courts, including the Seventh Circuit, "have long recognized an implicit requirement under Rule 23 that a class must be defined clearly and that membership be defined by objective criteria rather than by, for example, a class member's state of mind." Mullins v. Direct Digital, LLC, 795 F.3d 654, 657 (7th Cir. 2015). Defendant does not address Plaintiff's brief argument on this implicit ascertainability requirement and rightfully so because Plaintiff's proposed class satisfies it. To satisfy the "clear definition" component of the requirement, "class definitions generally need to identify a particular group, harmed during a particular time frame, in a particular location, in a particular way." Id. at 659-60. The objectivity component generally requires classes to be defined "in terms of conduct (an objective fact) rather than a state of mind." Id. at 660. The ascertainability requirement also prohibits class definitions from depending on the defendant's liability. Id. As in Mullins, Plaintiff's proposed class definition satisfies this requirement: "It identifies a particular group of individuals" (Illinois consumers who purchased Move Free Advanced Products) "harmed in a particular way (defrauded by labels and marketing materials) during a specific period in particular areas." Id. at 660-61. It also is not based on subjective criteria because it focuses on Illinois consumers' act of purchase and Defendant's conduct in labeling and advertising Move Free Advanced products. Id. at 661. And it does not create a fail-safe class because if Defendant prevails, "*res judicata* will bar class members from re-litigating their claims." Id.

**B. Plaintiff has established the Rule 23(a) prerequisites, including that her claims are typical of the claims of the proposed class and that she and her counsel will adequately protect the interests of the proposed class.**

Defendant does not dispute that Plaintiff has established the numerosity prerequisite under Rule 23(a)(1) and the commonality prerequisite under Rule 23(a)(2). Plaintiff's proposed class satisfies the numerosity prerequisite because it contains tens of thousands of Illinois consumers who have purchased Move Free Advanced products since May 28, 2015. Dkt. 31 at 16; Dkt. 32 at 16. So too does Plaintiff's proposed class satisfy the commonality requirement because at least one major common question drives this case: whether Defendant's packaging labeling of its Move Free Advanced products are likely to mislead a reasonable consumer as to the products' purported joint health benefits. See, e.g., Mullins v. Direct Digital, LLC, 795 F.3d 654, 673-74 (7th Cir. 2015) (whether representations were false or misleading is a common question suitable for class treatment on consumer fraud claim); Suchanek v. Sturm Foods, Inc., 764 F.3d 750, 758 (7th Cir. 2014) (question of whether product packaging was likely to mislead a reasonable consumer was common to consumer fraud claims of every class member).

Rather, Defendant focuses its arguments on the typicality and adequacy prerequisites under Rule 23(a). First, Defendant argues that Plaintiff's claims are not typical of the class of Illinois consumers who purchased Move Free Advanced products and, as a result, Plaintiff is not an adequate class representative. Second, Defendant contends that Plaintiff's counsel is not adequate because Plaintiff's counsel sent a letter to a scientific journal demanding that the journal retract two studies on FruiteX-B, an ingredient in Move Free Advanced products.

The typicality and adequacy prerequisites under Rule 23(a) are interrelated and often merge. CE Design Ltd. v. King Architectural Metals, Inc., 637 F.3d 721, 724 (7th Cir. 2011). A class representative satisfies Rule 23(a)(3)'s typicality prerequisite when the representative's

6

claims "arise from the same events or course of conduct that gives rise to the putative class members' claims." Beaton v. SpeedyPC Software, 907 F.3d 1018, 1026 (7th Cir. 2018). "The individual claims may feature some factual variations as long as they 'have the same essential characteristics.'" Id. (quoting Oshana v. Coca-Cola Co., 472 F.3d 506, 514 (7th Cir. 2006). A representative satisfies Rule 23(a)(4)'s adequacy prerequisite when they are "a member of the putative class and have the same interest and injury as other members." Beaton, 907 F.3d at 1027. However, the adequacy prerequisite may not be satisfied if the representative's claims are subject to unique defenses that would not defeat the claims of unnamed class members. Id.; CE Design, 637 F.3d at 725.

As to Plaintiff, Defendant argues that her claims are not typical of the claims of the putative class because Plaintiff has admitted she purchased Move Free Advanced products for reasons other than the alleged misrepresentations and, therefore, Plaintiff cannot establish that the alleged misrepresentations proximately caused her injury (the amount she paid for the product). Defendant notes that Plaintiff's deposition revealed that she purchased Move Free Advanced because a friend had recommended a supplement containing glucosamine, and that Plaintiff chose Move Free Advanced after previously trying a different glucosamine supplement because of price and the recommended number of pills per day (two instead of three). Plaintiff paints a different picture of her deposition testimony. According to Plaintiff, she purchased Move Free Advanced after reading the label, particularly the representation that it provides joint comfort and mobility.

As an initial matter, Defendant's arguments relate to Rule 23(a)(4)'s adequacy prerequisite as opposed to Rule 23(a)(3)'s typicality prerequisite because Defendant asserts that potential defenses to Plaintiff's individual claim may be unique to her and not whether Plaintiff's claim is typical of the putative class by reference to Defendant's alleged misrepresentations. CE Design,

7

637 F.3d at 725 ("'typicality under Rule 23(a)(3) should be determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members'" (quoting Wagner v. NutraSweet Co., 95 F.3d 527, 534 (7th Cir. 1996))). To that end, the Court finds that Plaintiff has satisfied the typicality prerequisite because her claims and the claims of the putative class members are both premised on the same conduct by Defendant: misrepresenting that its Move Free Advanced products provide joint health benefits when, in fact, they do not.

The Court's review of the transcript of Plaintiff's deposition reveals that she became aware of the purported joint health benefits of glucosamine supplements in about 2015 from television and internet advertisements as well as conversations with a friend. Dkt. 36-73 at 104-06. Plaintiff purchased a different glucosamine supplement in 2015 and finished the bottle. Dkt. 36-73 at 117-18. Plaintiff first purchased Move Free Advanced in 2016. Dkt. 36-73 at 113-14. At the time, Plaintiff intended to purchase a glucosamine supplement for the supposed joint health benefits but did not have a brand in mind. Dkt. 36-73 at 115-16. Plaintiff chose Move Free Advanced based its ingredients (glucosamine and chondroitin) and its packaging, which included, among other things, the words "comfort" and "flexibility" as well as an image of a running man. Dkt. 36-73 at 120-22. Plaintiff compared similar products and chose Move Free Advanced based on the ingredients, recommended dose, number of included pills, and relative price. Dkt. 36-73 at 122, 125-28. But Plaintiff reiterated that she evaluated packaging and decided on Move Free Advanced because "the wording on the box . . . said 'comfort' and 'flexibility,' and that's what I was looking for." Dkt. 36-73 at 128.

Plaintiff's deposition testimony refutes Defendant's argument that Plaintiff cannot establish that the alleged misrepresentations proximately caused damages such that Plaintiff is

8

subject to unique defenses that will become the focus of the litigation. True, to prevail on her claim under the Illinois Consumer Fraud Act, Plaintiff must prove that Defendant's alleged misrepresentations were the cause-in-fact or "but for" cause as well as the proximate cause of her damages. Mulligan v. QVC, Inc., 888 N.E.2d 1190, 1199 (Ill. App. Ct. 2008). As Defendant notes, under that standard, Plaintiff must ultimately prove that she was "actually deceived in some manner by the defendant's alleged misrepresentations of fact." Price v. Philip Morris, Inc., 848 N.E.2d 1, 52 (Ill. 2005). While Plaintiff's deposition testimony attributes several factors to her ultimate decision to purchase Move Free Advanced, Defendant does not argue Plaintiff is unique from the other class members in that respect. And Plaintiff repeatedly stated in her deposition that the packaging of Move Free Advanced that contains the alleged misrepresentations was one factor that motivated her to purchase Move Free Advanced. Accordingly, the Court finds that Plaintiff is a fair and adequate class representative under Rule 23(a)(4).

Defendant next argues that Plaintiff's counsel is not adequate under Rule 23(a) because Plaintiff's counsel sent a letter to a scientific journal requesting that the journal retract two studies on FruiteX-B, an ingredient in Move Free Advanced products. In the context of class counsel, the Rule 23(a)(4) adequacy prerequisite precludes class certification where the putative class counsel is "unqualified, has created a conflict between the firm and the putative class, or has violated a specific ethical rule." Beaton, 907 F.3d at 1028. Defendant does not dispute the qualifications of Plaintiff's counsel and does not assert a conflict of interest between Plaintiff's counsel and the putative class. Rather, Defendant views the retraction request as a violation of counsel's ethical obligations and an attempt to influence and interfere with evidence bearing directly on this case.

Defendant compares the letter to the putative class counsel's conduct in Reliable Money Order, Inc. v. McKnight Sales Co., where the Seventh Circuit found denial of class certification

9

would have been warranted if class counsel attempted to pay $5,000 to a witness in exchange for favorable testimony. 704 F.3d 489, 501 (7th Cir. 2013). The Court finds Defendant's comparison to Reliable Money Order particularly unpersuasive: sending a letter requesting that a journal retract articles it published is not in the same universe of conduct as attempting to pay a witness in exchange for favorable testimony.

The other cases that Defendant cites where class certification was denied or where a class was decertified based on inadequacy of class counsel are similarly inapposite. Those cases involve varying levels of discovery misconduct that is not at all analogous to Plaintiff's counsel's letter. See Crissen v. Gupta, No. 2:12-cv-00355-JMS-WGH, 2014 WL 4129586, at *8 (S.D. Ind. Aug. 19, 2014) (class certification denied based in part on plaintiff's counsel's discovery misconduct and "pattern of contumacious and dishonest conduct"); Brown-Pfifer v. St. Vincent Health, Inc., No. 1:06-cv-0236-SEB-JMS, 2007 WL 2757264, at *8 (S.D. Ind. Sept. 20, 2007) (class certification denied based in part on plaintiff's counsel's lack of diligence in prosecuting the case, including piecemeal discovery efforts and a previous award of costs on defendant's successful motion to compel); Wagner v. Lehman Bros. Kuhn Loeb Inc., 646 F. Supp. 643, 661 (N.D. Ill. 1986) (counsel disqualified from representing class because counsel led witnesses to believe they would be paid for testimony and a "professed lack of concern for any class action"); Kaplan v. Pomerantz, 132 F.R.D. 504, 510-11 (N.D. Ill. 1990) (decertifying class where class counsel was complicit in false deposition testimony).

In fact, contrary to Defendant's assertion, it is far from obvious that Plaintiff's counsel's conduct in sending the letter violated counsel's ethical obligations. Defendant does not cite any specific ethical rule or explain how Plaintiff's counsel violated any specific ethical rule by sending the letter. Defendant does not claim that Plaintiff counsel sent the letter as a formal part of this

10

proceeding, whether as a part the discovery process or otherwise, though Plaintiff's counsel admits that Plaintiff intends to use any retraction to help prove her case. Nor does Defendant contend that the journal or the authors of the studies that Plaintiff's counsel demanded the journal retract are likely witnesses in this case. Absent any indication that Plaintiff's counsel's letter in fact constituted a violation of any specific ethical rule, the Court finds that Plaintiff's counsel will fairly and adequately represent the interests of the class and, as a result, Plaintiff has established all prerequisites under Rule 23(a).

**C. Plaintiff has established the Rule 23(b)(3) requirements, including that the questions of law or fact common to class members predominate over any questions affecting only individual members and that damages can be measured on a class-wide basis.**

To reiterate, a class action may be maintained under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) continues, "The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Id. Assessments of the Rule 23(b)(3) requirements are made by reference to the common question identified: here, whether Defendant's packaging of its Move Free Advanced products is likely to mislead a reasonable consumer as to the products' purported joint health benefits.

But before analyzing the Rule 23(b)(3) requirements, the Court must first determine whether "'damages are susceptible of measurement across the entire class.'" Suchanek, 764 F.3d

11

at 760 (quoting <u>Comcast Corp. v. Behrend</u>, 569 U.S. 27, 35 (2013)). Plaintiff's theory of damages is simple: Defendant's Move Free Advanced products do not perform as advertised and, in fact, are worthless, so Plaintiff and all other Illinois consumers who purchased Move Free Advanced products are entitled to a full refund. Defendant first proposes that the Court must consider the merits of Plaintiff's claims that Defendant's Move Free Advanced products are worthless because they overlap with this issue of whether damages may be calculated class wide. But engaging the merits of Plaintiff's claims, as Defendant's recommend, is not necessary to assess whether Plaintiff's damages theory is applicable across the class. Instead, all that is required is that Plaintiff's theory of damages be consistent with her theory of liability. <u>Comcast</u>, 569 U.S. at 35. Plaintiff's theory of liability is that Defendant misrepresents its Move Free Advanced products as providing joint health benefits even though they are worthless. Plaintiff's theory of damages matches her theory of liability and is applicable across the proposed class: a full refund for a worthless product that Defendant's represented as providing joint health benefits.

Defendant further contends that Plaintiff has not shown that damages can be measured on a class-wide basis because Plaintiff's damages theory does not account for the possibility that Move Free Advanced products provide benefits to consumers beyond the advertised joint health benefits, that secondary ingredients in some of Defendant's Move Free Advanced products may provide other benefits, or that the joint health supplement market is undifferentiated such that most consumers of Move Free Advanced products would have purchased some joint health supplement even if not a Move Free Advanced product. But those contentions, even if true, do not render damages inherently individualized. Defendant acknowledges an alternative damages theory on their final contention that the joint health market is undifferentiated: "price premium" or, in other words, the difference between the price of the Move Free Advanced products and the market value

12

of that product without advertising misrepresentations. Notably, that is Plaintiff's damages theory. Plaintiff just alleges that the market value of Move Free Advanced without advertising misrepresentations is zero. As to Defendant's other contentions that Move Free Advanced products may provide benefits aside from the advertised joint health benefits, Defendants do not suggest that any such benefits are inherently individualized and therefore incapable of class-wide treatment.

Moving on to the Rule 23(b)(3) requirements, the Court has a "duty to take a 'close look' at whether common questions predominate over individual ones." Comcast, 569 U.S. at 34. In particular, "the court needs to assess the difficulty and complexity of the class-wide issues as compared with the individual issues." Suchanek, 764 F.3d at 760. Resolution of the merits of the common issue in this case—whether Defendant's packaging of its Move Free Advanced products is likely to mislead a reasonable consumer as to the products' purported joint health benefits—will require extensive expert testimony at the very least on whether Defendant's Move Free Advanced products provide joint health benefits and perhaps on whether a reasonable consumer would be misled by the packaging of Move Free Advanced products. Defendant does not dispute that the costs associated with that testimony would exceed the amount of any individual's claim.

Defendant posits that individual issues of proximate causation predominate over the common question because an individual's purchase of a Move Free Advanced product is not necessarily a result of Defendant's advertising, marketing, packaging, or labeling of the product. Rather, Defendant contends that most joint health supplement consumers are not influenced by advertising claims and, instead, choose supplements based on other factors like cost, doctor recommendations, online reviews, and ingredients. However, as Plaintiff notes, Defendant's assertion that advertising claims do not influence consumers of joint health supplements is

13

contradicted by Defendant's claim that consumers of joint health supplements "merely decide among brands" because joint health supplements are otherwise undifferentiated in the eyes of consumers. Moreover, Plaintiff persuasively argues that issues of proximate cause may well be susceptible to class-wide treatment. According to Plaintiff, the only logical explanation of a consumer's purchase of a Move Free Advanced product is for the purported joint health benefits. And even if proximate cause must be evaluated on an individual basis, the Court finds, similar to Suchanek, "if the class prevails on the common issue, it would be a straightforward matter for each purchaser to present her evidence . . . ." Suchanek, 764 F.3d at 760.

Defendant also objects to the propriety of a class action in this case based on a similar class action, Lerma v. Schiff Nutrition Int'l, Inc., which covered the same Move Free Advanced products and all advertising, except for the "5 Signs of Joint Health" claim. Lerma settled on a nationwide basis and class members released all advertising claims related to Move Free Advanced as of May 27, 2015. Defendant argues that members of the class in Lerma who are also members of this putative class released all of their claims except as to the new "5 Signs of Joint Health" claim and, as a result, it will be impossible to determine for which class members the 5 Signs claim was the exclusive proximate cause of their purchase. But as Plaintiff explains, that is not what the Lerma settlement did. Instead, the release of class members' claims based on the Lerma settlement was as to advertising claims that accrued during the class period, between January 1, 2005 and May 27, 2015. Plaintiff, however, has defined her proposed class as beginning May 28, 2015, outside the scope of the release from the Lerma settlement.

Defendant's remaining arguments are similarly unavailing. Though Defendant claims that Plaintiff's class definition is overbroad because it includes individuals who have received refunds and would not be entitled to additional damages, Plaintiff correctly notes that Defendant may seek

an offset for those refunds if Defendant is found liable. Alternatively, Plaintiff concedes that individuals who received refunds may be excluded from the class definition. The Court chooses the latter such that the class definitions are revised to exclude individuals who received a full refund for purchases of Move Free Advanced products during the class period. See Yamagata v. Reckitt Benckiser LLC, No. 17-cv-03529-VC, 2019 WL 3815718, at 1, n. 1 (N.D. Cal. June 5, 2019).

Defendant's claim that the class is overbroad because it includes consumers who obtained benefits from and were happy with their purchases of Move Free Advanced products also misses the mark. Plaintiff's class claims "do not rise or fall on whether individual consumers experienced health benefits, due to the placebo effect or otherwise. They rise or fall on whether [Defendant's] representations were deceptive." Mullins, 795 F.3d at 673. An Illinois consumer who purchased a Move Free Advanced product may have been deceived and therefore harmed, even if they perceived some benefit and were happy with their purchase.

## III. CONCLUSION

"Rule 23(b)(3) class actions are designed to 'cover cases in which a class would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" Suchanek, 764 F.3d at 759 (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 615 (1997)). Plaintiff has established the Rule 23(a) prerequisites and the Rule 23(b)(3) requirements and shown that the purposes for which a Rule 23(b)(3) class action was designed are served by allowing this case to proceed as a class action. The predominate common issue—whether Defendant's packaging of its Move Free Advanced products is likely to mislead a reasonable consumer as to the products' purported joint health benefits—is central to liability and class-wide resolution

would substantially advance this case. And the class members' claims are for small amounts compared to the aggregate of all claims and compared to the costs of litigating this case. Plaintiff's motion for class certification is granted.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

DATE:  October 27, 2020